IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01553-REB-KLM

THE PHOENIX INSURANCE COMPANY, a Connecticut insurance company, and
ST. PAUL SURPLUS LINES INSURANCE COMPANY, a Minnesota insurance company,

    Plaintiffs,

v.

TRINITY UNIVERSAL INSURANCE COMPANY OF KANSAS, a Kansas insurance company,
TRINITY UNIVERSAL INSURANCE OF KANSAS, a Kansas insurance company,
TRINITY UNIVERSAL INSURANCE COMPANY, a Texas insurance company, and
MOUNTAIN STATES MUTUAL CASUALTY COMPANY, a New Mexico insurance company,

    Defendants.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Plaintiffs' Motion to Strike Exhibit C to the Motion for Summary Judgment of Trinity Universal Insurance Company of Kansas, Trinity Universal Insurance of Kansas, and Trinity Universal Insurance Company and all Reference Thereto** [Docket No. 152; Filed July 26, 2013] (the "Motion"). On August 15, 2013, Defendants Trinity Universal Insurance Company of Kansas, Trinity Universal Insurance of Kansas, and Trinity Universal Insurance Company (the "Trinity Defendants") filed a Response to the Motion [#172]. Plaintiffs have not filed a reply.[1] Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this

---

[1] The Court may rule on a pending motion at any time. D.C.COLO.LCivR 7.1 C.

1

Court for disposition. The Court has reviewed the Motion, the Response, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#152] is **GRANTED**.

## I. Factual Background

This case is brought by a general contractor's insurer against the insurers of various subcontractors seeking contribution for the defense costs associated with a lawsuit brought against the general contractor. In motions for summary judgment [##126, 128] pending before the Court, Plaintiffs and Defendants argue about the relative primacy of insurance policies with regard to the defense of the general contractor and the allocation of defense costs amongst Defendants.

More specifically, Okland Construction Company, Inc. ("Okland") served as the general contractor for the construction of the Rivergate Loft Condominiums (the "Project"). *Amended Complaint* [#11] at ¶¶ 21-22. Plaintiffs Phoenix Insurance Company and St. Paul Surplus Lines Insurance Company (collectively, "Travelers" or "Plaintiffs") insured Okland as the general contractor for the Project. *Id.* at ¶ 24. The Trinity Defendants insured Beaty Construction Company ("Beaty"), a subcontractor who worked on the Project. *See Trinity Defendants Motion for Summary Judgment* [#128] at 2.

On January 13, 2010, Rivergate Loft Condominium Owners Association ("RLCOA") filed a lawsuit against Okland and others (the "Underlying Action"), alleging construction defects and property damage in connection with the Project. *See Amended Complaint* [#11] at ¶ 21. On June 15, 2011, Plaintiffs commenced the present action, seeking to recover amounts that they allege various subcontractors' insurers were obligated to

contribute toward Okland's defense. *See generally Compl.* [#1]. On July 31, 2011, Plaintiffs filed their Amended Complaint [#11], which states three claims for relief against all Defendants. First, pursuant to their right of equitable subrogation, Plaintiffs assert a claim for reimbursement of fees and costs incurred in defending Okland in the Underlying Action. *See Amended Complaint* [#11] at 7-8. Second, pursuant to their rights of contribution and equitable contribution, Plaintiffs assert a claim to recover various subcontractors' insurers' proportionate shares of fees and costs incurred in defending Okland in the Underlying Action. *Id.* at 8-9. Third, Plaintiffs assert a claim for declaratory relief stating that the subcontractors' insurance policies provided for Okland's defense on a primary basis and the Travelers Policy provided for Okland's defense on an excess basis. *Id.* at 9-10.

On July 25, 2013, the Trinity Defendants filed their Motion for Summary Judgment [#128] which attached a variety of documents, including the document at issue in the instant Motion ("Exhibit C"). Exhibit C is a spreadsheet which appears to allocate liability in the Underlying Action among various subcontractors, including Beaty. In addition, Exhibit C is referenced three times in the Trinity Defendants' Motion for Summary Judgment. *See Trinity Motion for Summary Judgment* [#128] at 4, 12, 13. In their Motion for Summary Judgment, the Trinity Defendants rely on Exhibit C for the proposition that Beaty "was responsible for less than one percent (0.77%) of the total cost of repair asserted" by RLCOA in the Underlying Action. *Id.* at 4. Thus, the Trinity Defendants argue that "[t]he defense costs in this case should [be] allocated in an equitable manner" which results in a "pro rata division of any defense costs based upon the allocation of liability in the [U]nderlying [Action]." *Id.* at 10.

In the Motion,[2] Plaintiffs argue that Exhibit C should be stricken because: (1) Exhibit C is inadmissible pursuant to Fed. R. Evid. 701 as an expression of an expert opinion by a lay witness; and (2) Exhibit C is inadmissable pursuant to Fed. R. Evid. 702 because the Trinity Defendants have not established that Exhibit C is based on sufficient facts or data, is the product of reliable principles and methods, or that the expert offering the opinion reliably applied those principles and methods in forming the opinion. *Motion* [#152] at 4-7.

In their Response, the Trinity Defendants argue that Plaintiffs' asserted lack of knowledge of the author of Exhibit C is disingenuous because: (1) it was authored by Okland's Rule 30(b)(6) witness in the Underlying Action; (2) in the instant action, Plaintiffs are standing in the shoes of Okland; and (3) Plaintiffs disclosed Exhibit C as part of their initial disclosures in this case. *Response* [#172] at 1, 5, 7. The Trinity Defendants further argue that "Plaintiffs are charged with Okland's knowledge and there is no prejudice, surprise, or harm relating to the disclosure [of] Mr. McEntire's[3] opinions." *Id.* at 7.

Notably, the Trinity Defendants do not argue that Mr. McEntire has been disclosed as an expert in this case, that he has been deposed in this case, or that Exhibit C has been offered as an expert report in this case. In contrast, Plaintiffs submitted a declaration stating that the Trinity Defendants "never disclosed Exhibit C to its Motion for Summary Judgment (Dkt. 128-3) as an expert report and never disclosed the author of Exhibit C as an expert." *McLafferty Decl.* [#148] at ¶ 3.

---

[2] The Court summarizes only those arguments contained in the Motion, Response, and Reply which merit analysis.

[3] Mr. McEntire was Okland's Rule 30(b)(6) witness in the Underlying Action and is allegedly the author of Exhibit C. *Response* [#172] at 2.

## II. Standard of Review

As an initial matter, the Court reminds the parties that D.C.Colo.LCivR 7.1 C requires that motions, responses, and replies include "a recitation of legal authority incorporated into the" document. Here, the Response cites to legal authority solely for the proposition that Plaintiffs stand in Okland's shoes in this case. While the Response mentions the rules included in Plaintiffs' Motion (Fed. R. Evid. 701, 702, and 802, and Fed. R. Civ. P. 26), the Trinity Defendants offer no legal authority interpreting those rules. Every other argument put forward by the Trinity Defendants fails to include citation to *any* legal authority. While the Motion does not suffer from the same glaring deficiencies as the Response, there are sections of argument, such as Sections A and B, which provide no case law supporting Plaintiffs' interpretation of the rules cited therein. It is not the Court's responsibility to conduct legal research in order to understand a party's argument, nor is the Court obligated to piece together support for an argument offered in a pleading.

### A. Judicial Estoppel

While the Trinity Defendants do not directly assert an estoppel argument, the Court understands the thrust of the Motion to be an argument that Plaintiffs, who now stand in the shoes of Okland, should be required to maintain the position regarding Exhibit C that Okland asserted in the Underlying Action. *See, e.g.*, *Response* [#172] at 7 ("Exhibit C was offered by Okland . . . in the [Underlying Action] and advanced by Okland as a component of Okland's claimed damages against the subcontractors. [ ] Plaintiffs stand in Okland's shoes and cannot now claim that the opinions that Okland proffered in the [Underlying Action] as a basis for its damages are improper testimony."). Accordingly, the Court briefly addresses judicial estoppel.

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion" which may be based on three factors. *Queen v. TA Operating, LLC*, --- F.3d ---, 2013 WL 419322, at *4 (10th Cir. Aug. 20, 2012). These three factors are:

> First, a party's subsequent position must be clearly inconsistent with its former position. Next, a court should inquire whether the [ ] party succeeded in persuading the court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled. Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Id*. (quotation and internal modifications omitted). These factors are not "an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001). "Additional considerations may inform the doctrine's application in specific factual contexts." *Id*.

Here, the Court will address the second factor first. In considering this factor, the Court does not focus on whether Okland "acted with some nefarious motive." *Queen*, 2013 WL 4419322, at *7 (quotation omitted). Instead, the Court considers "whether [its] actions led [a court] to accept [its] position, so that judicial acceptance of an inconsistent position in a later proceeding would introduce the risk of inconsistent court determinations and thus pose a threat to judicial integrity." *Id*. The Trinity Defendants allege that they relied on Exhibit C to determine their insured's liability in the Underlying Action. *Response* [#172] at 2 (Exhibit C "was proffered by Okland and relied upon by Trinity in the settlement of the claims of Okland against Trinity's insured"). However, it is clear from the pleadings that the Underlying Action settled before trial. The Trinity Defendants do not allege, nor do they offer proof, that the state court was persuaded to accept any arguments or positions offered by Okland regarding Exhibit C in the Underlying Action. As a result, the Trinity Defendants

have not shown that the state court relied on Okland's position regarding Exhibit C. *See G & C Holdings, LLC v. Rexam Beverage Can Co.*, 2013 WL 2321611, at *4 (10th Cir. May 29, 2013) ("To be entitled to judicial estoppel, [plaintiff] had to prove that the district court relied upon [defendant's] representation").

In addition, regarding the first factor, the Trinity Defendants have not met their burden of showing that Plaintiffs' position in the instant case is "clearly inconsistent" with the position taken by Okland in the Underlying Action. *See New Hampshire*, 532 U.S. at 750. In their Motion, Plaintiffs challenge Exhibit C on procedural, not substantive grounds. For example, Plaintiffs argue that Exhibit C is inadmissible pursuant to Fed. R. Civ. P. 701 and 702. Such a position is not "clearly inconsistent" with Okland's use of Exhibit C in the Underlying Action.

Based on the above, the Court declines to invoke the equitable doctrine of judicial estoppel. The Trinity Defendants cite to no authority, and the Court has found none, which suggests that Plaintiffs are precluded from challenging the admissibility of a document authored by the insured's witness simply because the Plaintiffs are standing in the shoes of the insured in subsequent litigation. Because the scope of the documents use in the Underlying Action appears to have been limited, and because Okland appears not to have persuaded the court of anything by using it, Plaintiffs may challenge it here.

### B. Federal Rule of Evidence 701

Federal Rule of Evidence 701 provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. In addition, there is no distinction "between expert and lay *witnesses*, but rather between expert and lay *testimony*." Fed. R. Evid. 701 (advisory committee notes). Instead, Rule 701 was amended in 2000 to "make[ ] clear that any part of a witness' testimony that is based on scientific, technical, or other specialized knowledge . . . is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules." *Id*. The Tenth Circuit, in alignment with the advisory committee, "has held that testimony provided by a witness is expert testimony if the testimony is 'based on technical or specialized knowledge,' regardless of whether the witness is designated as an expert or fact witness." *Two Moms and a Toy, LLC v. Int'l Playthings, LLC*, No. 10-cv-02271-PAB-BNB, 2012 WL 5187757, at *1 (D. Colo. Oct. 19, 2012) (quoting *James River Ins. Co. v. Rapid Funding, LLC,* 658 F.3d 1207, 1214 (10th Cir. 2011)). "Rule 701 'does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness.'" *James River Ins. Co.*, 658 F.3d at 1214 (quoting *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979)). "When the subject matter of proffered testimony constitutes 'scientific, technical, or other specialized knowledge,' the witness must be qualified as an expert under Rule 702." *Life Wise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004). However, Rule 701 "allows lay witnesses to offer observations that are common enough and require a limited amount of expertise, if any." *Ryan Dev. Co., L.C. v. Indiana Lumbermans Mut. Ins. Co.*, 711 F.3d 1165, 1170 (10th Cir. 2013) (quotation omitted).

    **C.**     **Federal Rule of Evidence 702**

"Rule 702 allows expert testimony only where the 'witness [is] qualified as an expert

by knowledge, skill, experience, training, or education' to offer such opinions." *Life Wise Master Funding,* 374 F.3d at 928. To qualify as an expert, a witness is required to possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *Graham v. Wyeth Labs.,* 906 F.2d 1399, 1408 (10th Cir. 1990) (quotation omitted). In addition, the testimony must be "based on sufficient facts or data," be "the product of reliable principles and methods," and the expert must "reliably appl[y] the principles and methods to the facts of the case. Fed. R. Evid. 702.

The proponent of expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1107 (11th Cir. 2005) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n.10 (1993)). Rule 702 anticipates that, if challenged, the factual foundation supporting the specific testimony will be provided by the proponent of the witness. *See Dodge*, 328 F.3d at 1222. However, the proponent need not prove that "the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). Instead, the proponent must show that the witness has sufficient expertise to choose and apply a methodology, that the methodology is reliable, that the expert relied on sufficient facts and data, and that the methodology was otherwise reliably applied. *Id.*; *Daubert*, 509 U.S. at 595; *see also Dodge*, 328 F.3d at 1222.

### III. Analysis

As noted above, Rule 701 "allows lay witnesses to offer observations that are common enough and require a limited amount of expertise, if any." *Ryan Dev. Co., L.C.*

*v. Indiana Lumbermans Mut. Ins. Co.*, 711 F.3d 1165, 1170 (10th Cir. 2013) (quotation omitted). In contrast, "testimony provided by a witness is expert testimony if the testimony is 'based on technical or specialized knowledge,' regardless of whether the witness is designated as an expert or fact witness." *Two Moms and a Toy, LLC*, 2012 WL 5187757, at *1 (quoting *James River Ins. Co.,* 658 F.3d at 1214)

On its face, Exhibit C is a chart allocating fault for the construction defects at the Project amongst the various general contractors and subcontractors who worked on the Project. *See generally Exhibit C* [#128-3]. Far from being common observations that could be offered by a lay witness, the fault allocations are quite specific and are calculated to thousandths of a percent. This is not proper Rule 701 testimony because such conclusions constitute "scientific, technical, or other specialized knowledge." Fed. R. Civ. P. 702. Therefore, the opinions offered in Exhibit C constitute expert testimony which must be analyzed pursuant to Rule 702. *See Life Wise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-149 (1999) (Rule 702's reliability standard applies to *all* expert testimony, not just "scientific" testimony).

Under Rule 702, the Trinity Defendants have the burden of showing that the witness who expressed the opinions has sufficient expertise to choose and apply a methodology, that the methodology is reliable, that he relied on sufficient facts and data, and that the methodology was otherwise reliably applied. *Mitchell*, 165 F.3d at 781; *Daubert*, 509 U.S. at 595; *see also Dodge*, 328 F.3d at 1222. When evaluating the evidence offered by the Trinity Defendants, the Court "must determine whether the testimony has a reliable basis in knowledge and experience of the relevant discipline." *Kumho Tire,* 526 U.S. at 149

(internal quotation marks and citation omitted). In so doing, the Court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

In assessing reliability, the Court may consider a variety of factors, including, but not limited to: (1) whether the expert employed the same degree of intellectual rigor in formulating the opinion as he would be expected to employ in his own professional life, *see Kumho Tire*, 526 U.S. at 152; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion (or, whether the gap between the analytical data and the opinion proffered is too large), *see Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); and (3) whether the expert adequately accounted for obvious alternative explanations, *see Bitler v. A.O. Snith Corp.*, 400 F.3d 1227, 1237-38 (10th Cir. 2004). Courts have routinely excluded expert testimony that was based on nothing more than speculation. *See, e.g., Jetcraft Corp. v. Flight Safety Int'l*, 16 F.3d 362, 366 (10th Cir. 1993) (expert testimony excluded as professional speculation); *Eastridge Dev. Co. v. Halpert Assoc., Inc.*, 853 F.2d 772, 783 (10th Cir. 1988) (exclusion of expert testimony as "tentative and speculative" was not an abuse of discretion).

At the time of his deposition, Mr. McEntire was the secretary/treasurer of Okland. *McEntire Depo. Trans.* [#172-1] at 14:6. Earlier in his career, he served as the Controller of Okland. *Id.* at 14:8. Mr. McEntire has never been qualified as an expert with regard to the allocation of fault among entities. *Id.* at 16:3-6. Further, although Mr. McEntire's work involved reviewing disputes with subcontractors, it is not apparent from his deposition testimony that he had prior experience allocating damages similar to those at issue here. According to Mr. McEntire's testimony, Exhibit C was developed by:

> living this case for two years, being familiar with Okland's subcontract agreements and the language in the subcontract agreements, being familiar with particular subcontract agreements in this project itself, plus being in depositions, plus reading the expert reports and the other reports that came through and particularly the knowledge that I have of construction and how it goes together and how parts and pieces and subcontractors and designers interface with each other, based on my experience was how I allocated it.

*Id.* at 44:13-24.

The Trinity Defendants fail to provide any explanation of Mr. McEntire's experience or methodologies other than what is provided in the deposition transcript. The Court finds the deposition testimony insufficient to establish either that Mr. McEntire is a proper expert witness with regard to the allocation of fault among entities or that his conclusions regarding the allocation of fault are reliable. First, while an individual can be qualified based on "knowledge, skill, experience training, or education," *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006), the portion of the deposition transcript submitted by the Trinity Defendants offers no information about his knowledge base aside from Mr. McEntire's employment at Okland and the fact that he dealt with disputes with subcontractors. The Court finds this insufficient to establish Mr. McEntire to be an expert in the field of allocating fault for construction defects. Second, here, as in *Kumho Tire*, the Trinity Defendants have failed to satisfy the factors outlined in *Daubert* "or any other set of reasonable reliability criteria." *Kumho Tire*, 526 U.S. at 158; *see also Ho v. Michelin N. Am., Inc.*, No. 11-3334, 2013 WL 1277023, at *3 (10th Cir. March 29, 2013) (unpublished decision) (affirming trial court's exclusion of expert testimony pursuant to Rule 702).

Notably, the portion of Mr. McEntire's deposition testimony provided by the Trinity Defendants does not provide any real explanation of the methodology employed by Mr. McEntire. While it is clear that he reviewed certain documents and came to conclusions

regarding the allocation of each company's liability for the costs of repair, there is no explanation of the steps taken by Mr. McEntire to reach his conclusions. *See Mitchell v. Gencorp*, 165 F.3d 778, 781 (10th Cir. 1999) ("At a minimum, the expert testimony should include a description of the method used to arrive at the level of exposure and scientific data supporting the determination. The expert's assurance that the methodology and supporting data [are] reliable will not suffice.") (citing *Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). Because the portion of the deposition transcript provided does not include any information about the specific documents Mr. McEntire reviewed in reaching his conclusions, the Court cannot determine if he gathered "sufficient facts and data" as required by Fed. R. Evid. 702. *See United States v. Lauder*, 409 F.3d 1254, 1264 n.5 (10th Cir. 2005) (noting that this is a quantitative rather than qualitative analysis). In addition, the Court is unable to analyze whether Mr. McEntire's methodology is reliable. *See United States v. Crabbe*, 556 F.Supp.2d 1217, 1222 (D. Colo. 2008) ("The requirement that an opinion be derived from reliable principles or methods . . . involves two related inquires: (i) what methodology did the witness use to reach the opinion; and (ii) is that methodology generally deemed 'reliable' in the field in which the expert works."). Of course, without information regarding Mr. McEntire's methodology, the Court cannot determine if he reliably applied that methodology to the facts and data. *See Dodge*, 328 F.3d at 1222 (noting that the party with the burden must show that "the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements.") (citation omitted).

Accordingly, Exhibit C must be stricken pursuant to Fed. R. Evid. 702. Because the Court reaches this conclusion based on its analysis of the requirements of Fed. R. Evid.

701 and 702, it does not address the remaining arguments in Plaintiffs' Motion.

### IV. Conclusion

IT IS HEREBY **ORDERED** that Plaintiffs' Motion [#152] is **GRANTED**. Accordingly,

IT IS FURTHER **ORDERED** that Exhibit C [#128-3] attached to the Trinity Defendants' motion for summary judgment [#128] is **STRICKEN**.

Dated: August 29, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge