IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01553-REB-KLM

THE PHOENIX INSURANCE COMPANY, a Connecticut insurance company, and
ST. PAUL SURPLUS LINES INSURANCE COMPANY, a Minnesota insurance company,

      Plaintiffs,

v.

TRINITY UNIVERSAL INSURANCE COMPANY OF KANSAS, a Kansas insurance company,
TRINITY UNIVERSAL INSURANCE OF KANSAS, a Kansas insurance company,
TRINITY UNIVERSAL INSURANCE COMPANY, a Texas insurance company, and
MOUNTAIN STATES MUTUAL CASUALTY COMPANY, a New Mexico insurance company,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Plaintiffs' Motion for Partial Summary Judgment Re: Allocation of Damages** [Docket No. 126; Filed June 28, 2013] (the "Plaintiffs' Motion") and **Defendants Trinity Universal Insurance Company of Kansas, Trinity Universal Insurance of Kansas, and Trinity Universal Insurance Company's Motion for Summary Judgment** [Docket No. 128; Filed July 1, 2013] (the "Trinity Motion," and, collectively with Plaintiffs' Motion, the "Motions"). On July 19, 2013, Defendants Trinity Universal Insurance Company of Kansas, Trinity Universal Insurance of Kansas, and Trinity Universal Insurance Company (collectively, the "Trinity Defendants") filed a Response to Plaintiffs' Motion [#135]. On July 22, 2013, Defendant Mountain States Mutual Casualty

Company ("Mountain States") also filed a Response to Plaintiffs' Motion [#138].[1]  On July 25, 2013, Plaintiffs filed a Response to the Trinity Motion [#147].   On July 22, 2013, Plaintiffs filed a Reply in further support of Plaintiffs' Motion [#138].  On August 9, 2013, the Trinity Defendants filed a Reply in further support of the Trinity Motion [#170].  Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motions have been referred to this Court for a recommendation regarding disposition [#129].  The Court has reviewed the Motions, the Responses, the Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises.   For the reasons set forth below, the Court respectfully **RECOMMENDS** that Plaintiffs' Motion [#126] be **GRANTED in part** and that the Trinity Motion [#128] be **GRANTED in part**.

## I.  Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II.  Summary of the Case

### A.    Factual Background

This case is brought by a general contractor's insurer against the insurers of various subcontractors seeking contribution for the defense costs associated with a lawsuit brought against the general contractor.   In the Motions, Plaintiffs and the Trinity Defendants[2] each

---

[1] In its Response [#138], Defendant Mountain States revisits arguments regarding Plaintiffs' claims against Mountain States that were addressed in the Court's August 29, 2013 Recommendation [#174].  The Court will not revisit its findings in that Recommendation [#174] herein.

[2] Plaintiffs' Motion also includes discussion regarding former defendant State Farm Fire and Casualty Company ("State Farm").  However, Plaintiffs' claims against State Farm were dismissed with prejudice on July 30, 2013.  Therefore, the Court will not address arguments relating to State Farm herein.

argue about (1) whether the work performed by certain subcontractors, including a subcontractor insured by the Trinity Defendants, was implicated in the underlying litigation and (2) if such subcontractors' insurers are obligated to reimburse Plaintiffs for amounts spent in the defense of the general contractor, how such amounts should be allocated between the subcontractors' insurers.

More specifically, Okland Construction Company, Inc. ("Okland") served as the general contractor for the construction of the Rivergate Loft Condominiums (the "Project"). *See Amended Complaint* [#11] at ¶¶ 21-22; *see also Trinity Motion* [#128] at 2. Plaintiffs Phoenix Insurance Company and St. Paul Surplus Lines Insurance Company (collectively, "Travelers" or "Plaintiffs") insured Okland as the general contractor for the Project (the "Travelers Policy"). *Plaintiffs' Motion* [#126] at 2; *see generally Travelers Policy* [#70-6].[3] The Travelers Policy states that any other insurance under which Okland is added as an additional insured by attachment of an endorsement is primary to the Travelers Policy. *Travelers Policy* [#70-6] at 11. Specifically, the Travelers Policy states:

> **4.    Other Insurance**
>
>    If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
>    **a.    Primary Insurance**
>        This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless

---

[3] Plaintiffs incorporate by reference the statement of facts included in a prior motion for summary judgment [#69] and throughout Plaintiffs' Motion, they refer to exhibits attached to a prior declaration submitted by Mr. D'Agostino [#70], including the Travelers Policy [#70-6]. For purposes of judicial economy and overall efficiency, the Court allows incorporation of facts and exhibits from previous motions. However, the Court will not consider any argument made by a party in other pleadings.

any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c**. below.

**b.     Excess Insurance**
This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:
. . .

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers. . . .

*Travelers Policy* [#70-6] at 31.

In constructing the Project, Okland contracted with several subcontractors, including Beaty Construction Company ("Beaty"). *See generally September 4, 2003 Beaty Subcontract* [#128-1]; *April 26, 2004 Beaty Subcontract* [#128-2] (collectively, the "Beaty Subcontracts"). Pursuant to the Beaty Subcontracts, Beaty was hired by Okland to complete masonry work at the Project. *September 4, 2003 Beaty Subcontract* [#128-1] at 2; *April 26, 2004 Beaty Subcontract* [#128-2] at 2-3.

The Beaty Subcontracts require Beaty "to carry comprehensive liability and property damage Insurance . . . and name [Okland] as an additional Insured on all insurance certificates . . . in order to protect [Okland] and [Beaty] against loss resulting from any acts of [Beaty], [its] agents, and/or employees." *September 4, 2003 Beaty Subcontract* [#128-1]

4

at 5; *April 26, 2004 Beaty Subcontract* [#128-2] at 6.   The Beaty Subcontracts also list types of insurance and the associated forms which Beaty is required to obtain and execute. *Id.*  This includes: "Commercial General Liability Insurance . . . with . . . Endorsements attached thereto including the following or their equivalent . . . ISO Form CG 20 10 (11/85), Additional Insured - Owners, Lessees, Or Contractors (Form B), <u>naming the General Contractor and Owner as additional Insured</u> and containing the following statement - "This Endorsement Also Constitutes Primary Coverage and not contributing In The Event Of Any Occurrence, Claim, Or Suit".  *Id.* (emphasis and capitalization in original).   The Beaty Subcontracts further state: "All insurance required hereunder shall be maintained in full force and effect in a company or companies satisfactory to [Okland], [and] shall be maintained at [Beaty's] expense until performance in full hereof . . ."  *Id.*

Beaty was insured by the Trinity Defendants (the "Trinity Policy").  *See D'Agostino Decl.* [#127] at ¶ 2; *see generally Trinity Policy* [#127-1].[4]  The Trinity Policy provides coverage for "insureds."  *Trinity Policy* [#127-1] at 10.  Under the Trinity Policy, "insureds" includes Beaty as the "Named Insured" and Okland as an "additional insured."  *Id.* at 6 ("Named Insured: Beaty"), 9 ("Okland . . . named as additional insured").  In addition, the Trinity Policy includes an endorsement titled "Automatic Additional Insureds" which modifies Section II of the Trinity Policy ("Who Is An Insured") as follows:

Any entity you[5] are required in a written contract (hereinafter called Additional

---

[4]  The two copies of the Trinity Policy provided by the parties [##127-1, 128-7] only contain the portions of the Trinity Policy the parties deemed relevant to their motions.  The version provided at [#127-1] is the most complete.   The Court includes citations to that version in this Recommendation.

[5]  "You" refers to Beaty, the Named Insured.  *Trinity Policy* [#127-1] at 10.

Insured) to name as an insured is an insured but only with respect to liability arising out of your premises, "your work" for the Additional Insured, or acts or omissions of the Additional Insured in connection with the general supervision of "your work" to the extent set forth below:

. . .

Except when required otherwise by contract, this insurance does not apply to:

(1) "Bodily injury" or "property damage"[6] occurring after:

    (a) All work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the Additional Insured(s) at the site of the covered operations has been completed; or

    (b) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(2) "Bodily injury" or "property damage" arising out of any act or omission of the Additional Insured(s) or any of their employees, other than the general supervision of work performed for the Additional Insured(s) by you.

*Trinity Policy* [#127-1] at 23.  The coverage provided pursuant to the Trinity Policy includes

"sums that the insured becomes legally obligated to pay as damages because of 'bodily

injury' or 'property damage' to which this insurance applies."  *Id.* at 10.

    Section IV of the Trinity Policy includes conditions to commercial general liability

---

[6] "Property damage" is defined in the Trinity Policy as:
    (a) Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    (b) Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
*Trinity Policy* [#127-1] at 21.

  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
*Id.* at 20.

coverage.  Among other things, the policy requires that "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim."  *Id.* at 17.  It also requires that Beaty "and any other involved insured must" cooperate with Trinity, provide copies of documents relating to the occurrence or claim to Trinity, and authorize Trinity to obtain certain documents.  *Id.*  Insureds are also required to "[c]ooperate with us[7] in the investigation or settlement of the claim or defense against the 'suit'."  *Id.*  In addition, the Trinity Policy states that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our[8] consent."  *Id.*

The Trinity Policy further provides that:

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.     Primary Insurance
This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below.

b.     Excess Insurance
This insurance is excess over:

. . .

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of endorsement.

When this insurance is excess, we will have no duty under Coverage A or B

---

[7]   "Us" refers to the insurer, the Trinity Defendants.  *Trinity Policy* [#127-1] at 10.

[8]   "Our" refers to the insurer, the Trinity Defendants.  Trinity Policy [#127-1] at 10.

to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". . . .

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

> (1) The total amount that all such other insurance would pay for the loss in this absence of this insurance; and
> (2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

C.    Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

*Trinity Policy* [#127-1] at 17-18.

On January 13, 2010, Rivergate Loft Condominium Owners Association ("RLCOA") filed a lawsuit against Okland and others (the "Underlying Action"), alleging construction defects and property damage in connection with the Project.  *Plaintiffs' Motion* [#126] at 2; *Trinity Motion* [#128] at 2; *see generally Underlying Complaint* [#70-5].

On April 6, 2011, Okland tendered a claim for defense to the Trinity Defendants. *Trinity Motion* [#128] at 4; *see generally April 6, 2011 Letter* [#128-4].  In the April 6, 2011 Letter, Okland notified the Trinity Defendants that in the Underlying Action, "[a]llegations have been made by [RLCOA] that indicate that Beaty Construction Co. Inc. has performed

8

its work negligently." *April 6, 2011 Letter* [#128-4] at 1.  The April 6, 2011 Letter also states

that it is "a follow up and supplement to the tender of defense sent to Beaty . . . by letter

dated Aug. 2, 2009." *Id.* Okland further "tenders and demands that Trinity . . . provide and

contribute to the defense of the above captioned matter on behalf of Okland." *Id.* On

August 4, 2011, the Trinity Defendants "accepted the defense of Okland pursuant to a

reservation of rights." *Trinity Motion* [#128] at 4; *see generally August 4, 2011 Letter* [#128-

6].  The August 4, 2011 Letter also included a conclusion section which stated:

> Trinity will agree to share in the defense cost of defending Okland but
> requires additional information to determine what share of the defense costs
> it will pay.  Please provide Trinity with information concerning what other
> insurers are currently defending Okland, and if known, how they are sharing
> in the cost of defending Okland.  Once Trinity has that information it will be
> in position to discuss a cost sharing arrangement with those other insurers.
>
> . . .
>
> Trinity expressly reserves all rights in under the Policies and the Umbrella
> Policies and available at law to take additional reservations and denials . . .

*August 4, 2011 Letter* [#128-6] at 34-35.

On November 29, 2011, Okland finalized a settlement agreement with RLCOA

regarding the Underlying Action. *Trinity Motion* [#128] at 7; *D'Agostino Depo. Trans.* [#128-

5] at 149:11-16.  The Trinity Defendants allege that Plaintiffs "settled the [U]nderlying

[A]ction without so much as requesting Trinity's participation in the settlement negotiations."

*Trinity Reply* [#170] at 10.

On June 19, 2012, Okland and Beaty entered into a settlement agreement with an

effective date of April 27, 2012 which "fully and finally [ ] resolve[d] and release[d] all claims

which have been asserted or which could have been asserted by Okland against Beaty in

[the Underlying Action]." *Settlement Agreement* [#128-8] at 1; *see also Trinity Motion*

9

[#128] at 7.  The Settlement Agreement also states:

> Nothing in this Agreement shall preclude or limit the right of Okland and/or Travelers (or any Travelers related entity) from pursuing its additional insured (AI) claims in this matter; SUBJECT HOWEVER, to a credit in the sum of $75,000.00 which [Okland] agree[s] to apply toward the payment and satisfaction of any recovery on the claim which [Beaty] ha[s] asserted or which may be asserted against Beaty's insurers for Additional Insured coverage under any policies of insurance issued to Beaty.

*Settlement Agreement* [#128-8] at 2.

On June 15, 2011, Plaintiffs commenced the present action, seeking to recover amounts that they allege various subcontractors' insurers were obligated to contribute toward Okland's defense.  *See generally Compl.* [#1].  On July 31, 2011, Plaintiffs filed an Amended Complaint [#11], stating three claims for relief against all Defendants.  First, pursuant to their right of equitable subrogation, Plaintiffs assert a claim for reimbursement of fees and costs incurred in defending Okland in the Underlying Action.  *See Amended Complaint* [#11] at 7-8.  Second, pursuant to their rights of contribution and equitable contribution, Plaintiffs assert a claim to recover various subcontractors' insurers' proportionate shares of fees and costs incurred in defending Okland in the Underlying Action.  *Id.* at 8-9.  Third, Plaintiffs assert a claim for declaratory relief stating that the subcontractors' insurance policies provided for Okland's defense on a primary basis and the Travelers Policy provided for Okland's defense on an excess basis.  *Id.* at 9-10.

## B.    Plaintiffs' Motion[9]

In Plaintiffs' Motion, Plaintiffs ask the Court to find that the "Travelers [P]olicy is excess over the Defendants' policies" and that "[a]s a result, the Defendants had an equal

---

[9] The Court summarizes only those arguments contained in the Motions, Responses, and Replies which merit analysis.

and full obligation to defend Okland." *Plaintiffs' Motion* [#126] at 1. In support of this request, Plaintiffs argue that the language of the Travelers Policy makes it excess to other insurance and that the Trinity Policy contains language making it primary over the Travelers Policy. *See id.* at 4-6. Plaintiffs also argue that the Trinity Defendants had a full obligation to defend Okland in the Underlying Action. *Id.* at 7-9. As a result, Plaintiffs argue that all remaining Defendants, including the Trinity Defendants, are jointly and severally liable for the costs incurred in defending Okland in the Underlying Action and that such costs cannot be allocated based on each subcontractor's liability. *Id.* at 9-10.

In their Response, the Trinity Defendants argue that the claims against them should be dismissed for the reasons set forth in the Trinity Motion. *Trinity Response* [#135] at 2. The Trinity Defendants further argue that the Trinity Policy does not provide primary coverage. *Id.* at 3-6. Instead, the Trinity Defendants argue that both the Travelers Policy and the Trinity Policy contain language making them excess to any other insurance. They further argue that, as a result, under Colorado law the two policies are treated as "repugnant" and "operate as co-primary" insurance. *Id.* at 6. The Trinity Defendants also argue that their coverage of Okland should be limited to the work performed by Beaty and that reading the Trinity Policy to require the Trinity Defendants to pay the full defense costs of Okland "thwarts the general object of the Trinity [P]olicy." *Id.* at 7. Instead, the Trinity Defendants argue that if the claims against the Trinity Defendants are not dismissed, the defense costs of Okland should be allocated on a *pro rata* basis. *Id.*

In their Reply, Plaintiffs simply refer the Court to the arguments asserted in Plaintiffs' Motion [#126] and Plaintiffs' Response to the Trinity Motion [#147].

**C.     The Trinity Motion**

11

In the Trinity Motion, the Trinity Defendants argue that the Trinity Policy limits their obligation to defend Okland to claims for which Okland allegedly has vicarious liability flowing from Beaty's work. *Trinity Motion* [#128] at 9-10. The Trinity Defendants claim that "Okland's additional insured status flows from the automatic additional insured endorsement of the Trinity [P]olicy and the contract between Beaty and Okland that contained a scope of work that was limited to masonry veneer." *Id.* at 10. The Trinity Defendants also argue that the defense costs for the Underlying Action "should [be] allocated in an equitable manner based upon the scope of work of the named insured subcontractor for the policy under which Okland was an additional insured." *Id.* The Trinity Defendants further argue that they have already satisfied their *pro rata* share of the Okland defense costs due to the set-off contained in the Settlement Agreement [#128-8]. *Id.* at 12-13. This is in part due to their allegation that Beaty was only responsible for 0.77% of the total cost of the repairs of the Project and in part due to their belief that "Plaintiffs cannot recover any costs and fees from [the Trinity Defendants] that were incurred before the tender to [the Trinity Defendants]" which occurred on April 6, 2011. *Id.* at 13-14. The Trinity Defendants also argue that the amount claimed by Plaintiffs should be limited because Plaintiffs failed to cooperate with the Trinity Defendants after the Trinity Defendants' acceptance of tender as required by the Trinity Policy. *Id.* at 15-17.

In their Response, Plaintiffs argue that the Trinity Defendants' argument that their obligation to pay is limited to 0.77% of defense costs because Beaty was only liable for 0.77% of the repair costs at the Project is arbitrary and speculative. *Response* [#147] at 4. Plaintiffs also note that they filed a motion to strike the exhibit upon which the Trinity Defendants rely for their argument regarding the allocation of fault. *Id.* at 4, 7-8; *see*

*generally Motion to Strike* [#152].  Plaintiffs further argue that if the defense costs are allocated based on the underlying claims, then the Trinity Defendants actually should pay much more than 0.77% because "a significant portion of the defenses costs were incurred by [Plaintiffs] in [ ] defense of claims directly involving the work of Beaty." *Id.* at 9.  Plaintiffs also challenge the date of initial tender to the Trinity Defendants.  *Id.*  They argue that while they "cannot recover pre-tender fees and costs, . . . there is a question of material fact regarding the date of initial tender."  *Id.*  Next, Plaintiffs argue that the Trinity Defendants did not assert affirmative defenses regarding "its 'notice' or 'failure to cooperate' provisions" and, therefore, are precluded from arguing that these provisions in the Trinity Policy prevent Plaintiffs from recovering the defense costs.  *Id.* at 10.  Plaintiffs also argue that the Trinity Defendants only requested information related to the defense bill and that those bills were provided to the Trinity Defendants.  *Id.* at 11.  They further argue that they cooperated with the Trinity Defendants.  *Id.*

In their Reply, the Trinity Defendants assert that under the Trinity Policy they "never had an obligation to provide a complete defense to every claim asserted against Okland for every one of its subcontractors' scopes of work."  *Reply* [#170] at 2.  The Trinity Defendants further argue that the language of the Trinity Policy clearly limits coverage of Okland, as an additional insured, to the work performed by Beaty.  *Id.* at 3-4.  The Trinity Defendants then revisit their allocation argument.  *Id.* at 4-6.  The Trinity Defendants also revisit their arguments regarding the date of tender by Okland and the requirement that Okland and Plaintiffs provide information to the Trinity Defendants.  *Id.* at 7-10.  Finally, the Trinity Defendants argue that their "settlement with Okland in the [U]nderlying [A]ction contemplated the satisfaction of [Plaintiffs'] defense fees."  *Id.* at 10.

### III.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission*

14

*Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

Conclusory statements based merely on conjecture, speculation, or subjective belief are

not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869,

875 (10th Cir. 2004).   The nonmoving party's evidence must be more than "mere

reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded.

*See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d

ed.1998).

## IV.  Analysis

### A.     Applicable Principles of Colorado Insurance Law

The parties agree that Colorado law applies.  "Under Colorado law, an insurance

policy is construed according to principles of contract interpretation." *Greystone Const.,*

*Inc. v. National Fire & Marine Ins Co.*, 2013 WL 1324600, at *3 (D. Colo. March 31, 2013)

(citing *Thompson v. Md. Cas. Co.,* 84 P.3d 496, 502 (Colo. 2004)).  "The policy's language

must be given the plain meaning of the words used, unless there is an indication by the

parties of a mutual intent that an idiosyncratic meaning would apply." *Id.*  Further, the Court

must view the policy as a whole, "giving effect to all provisions." *Id.*  In addition, in a

dispute regarding an insurance policy, "[b]ecause of the 'unique nature of insurance

contracts and the relationship between the insurer and insured,' ambiguous provisions are

construed against the insurer and in favor of providing coverage to the insured." *Id.*

(quoting *Cyrus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo. 2003)).

Coverage exclusions are also construed against the insurer. *See Worsham Constr. Co. v.*

*Reliance Ins. Co.,* 687 P.2d 988, 990 (Colo. App. 1984).  "To benefit from an exclusionary

provision in a particular contract of insurance, the insurer must establish that the exemption

claimed applies in the particular case and that the exclusions are not subject to any other reasonable interpretations." *Am. Family Mut. Ins. Co. v. Johnson,* 816 P.2d 952, 953 (Colo. 1991).

The Court must give effect to the intent and reasonable expectations of the parties to the contract, the insurer and the insured. *See Thompson v. Maryland Cas. Co.,* 84 P.3d 496, 501 (Colo. 2004). In doing so, "the Court first determines whether the contract is ambiguous, *i.e.*, susceptible to more than one meaning." *Lloyd's*, 2007 WL 2694854, at *3 (citing *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1359 (Colo. 1993)). If the Court finds that the policy is ambiguous, "then the Court must determine what the parties to the contract intended. Whenever possible, such intent is discerned from the policy itself." *Id.* (citing *Bengtson v. USAA Property & Cas. Ins.*, 3 P.3d 1233, 1235 (Colo. App. 2000)). As part of its analysis of what the parties to the contract intended, the Court may consider extrinsic evidence. *See Cyprus Amax Minerals Co.,* 74 P.3d at 301-02. If the Court finds that the contract is not ambiguous, "then the Court enforces it according to its plain language." *Lloyd's*, 2007 WL 2694854, at *3 (citing *Mapes v. City Council of City of Walsenburg,* 151 P.3d 574 (Colo. App. 2006)). "The Court gives each word in the contract a plain and ordinary meaning, unless the contract evidences otherwise. . . . and reads the contract as a whole and does not read its provisions in isolation." *Id.* (citing *Cyprus Amax Minerals Co.*, 74 P.3d at 299)).

**B.    The Scope of the Trinity Policy**

Under the Trinity Policy, "insureds" includes Beaty as the "Named Insured" and Okland as an "additional insured." *Trinity Policy* [#127-1] at 6 ("Named Insured: Beaty"), 9 ("Okland . . . named as additional insured"). In addition, the Trinity Policy includes an

endorsement titled "Automatic Additional Insureds" which modifies Section II of the Trinity

Policy ("Who Is An Insured") as follows:

> Any entity you[10] are required in a written contract (hereinafter called Additional Insured) to name as an insured is an insured but only with respect to liability arising out of your premises, "your work" for the Additional Insured, or acts or omissions of the Additional Insured in connection with the general supervision of "your work" to the extent set forth below:
>
> . . .
>
> Except when required otherwise by contract, this insurance does not apply to:
>
> (1) "Bodily injury" or "property damage"[11] occurring after:
>
> > (a) All work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the Additional Insured(s) at the site of the covered operations has been completed; or
> >
> > (b) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
> >
> > > (2) "Bodily injury" or "property damage" arising out of any act or omission of the Additional Insured(s) or any of their employees, other than the general supervision of work performed for the Additional Insured(s) by you.

---

[10] "You" refers to Beaty, the Named Insured.  *Trinity Policy* [#127-1] at 10.

[11] "Property damage" is defined in the Trinity Policy as:
(a) Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
(b) Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
*Trinity Policy* [#127-1] at 21.

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
*Id.* at 20.

*Trinity Policy* [#127-1] at 23.  The coverage provided pursuant to the Trinity Policy includes "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  *Id.* at 10.  These provisions are not ambiguous.  On its face, the Trinity Policy insured Okland only for liability relating to the work preformed by Beaty on the Project.[12]

## C.   Conditions to Coverage

As an initial matter, "the Federal Rules of Civil Procedure do not permit a party to raise new claims at the summary judgment stage or otherwise to create a late shift in the thrust of a case when the shift causes prejudice to the opposing party."  *American Fam. Mut. Ins. Co. v. Haslam*, No. 09-cv-00724-REB-MEH, 2011 WL 148836, at *2 (D. Colo. Jan. 10, 2011) (citations omitted).   Plaintiffs argue that the Trinity Defendants' argument regarding the notice and failure to cooperate provisions in the Trinity Policy cannot be asserted now because the Trinity Defendants failed to assert appropriate affirmative defenses based on those clauses.  *Plaintiffs' Response* [#147] at 10.  However, in their Answer, the Trinity Defendants included the following as one of their affirmative defenses: "Plaintiffs' claims may be barred, in whole or part, by express terms, conditions, limitations and disclaimers of any applicable contract."  *Trinity Answer* [#29] at 13.  Therefore, "there is no basis to conclude that [the Trinity Defendants] ha[ve] sought to raise a new defense at the summary judgment stage."  *American Fam. Mut. Ins. Co.* , 2011 WL 148836, at *2.

As noted above, section IV of the Trinity Policy includes conditions to commercial

---

[12]   The parties are in agreement that the Trinity Defendants are not responsible for any pre-tender amounts.  *Trinity Motion* [#128] at 13; *Plaintiffs' Response* [#147] at 9 ("Travelers concedes that it cannot recover pre-tender fees and costs").  Therefore, the Court will not address this issue.

general liability coverage.  Among other things, the policy requires that "You[13] must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim."  *Id.* at 17.  It also requires that Beaty "and any other involved insured" provide copies of documents relating to the occurrence or claim to Trinity and authorize Trinity to obtain certain documents.  *Id.*  Insureds are also required to "[c]ooperate with us[14] in the investigation or settlement of the claim or defense against the 'suit'."  *Id.*  In addition, the Trinity Policy states that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our[15] consent."  *Id.*

The following facts are undisputed:

- On April 6, 2011, Okland tendered a claim for defense to the Trinity Defendants.  *See generally April 6, 2011 Letter* [#128-4].

- In the April 6, 2011 Letter, Okland notified the Trinity Defendants that in the Underlying Action, "[a]llegations have been made by [RLCOA] that indicate that Beaty Construction Co. Inc. has performed its work negligently."  *April 6, 2011 Letter* [#128-4] at 1.

- The April 6, 2011 Letter also states that it is "a follow up and supplement to the tender of defense sent to Beaty . . . by letter dated Aug. 2, 2009."  *Id.*

- Okland further "tenders and demands that Trinity . . . provide and contribute to the defense of the above captioned matter on behalf of Okland."  *Id.*

- On August 4, 2011, the Trinity Defendants accepted the defense of Okland pursuant to a reservation of rights.  *See generally August 4, 2011 Letter* [#128-6].

---

[13]  "You" refers to Beaty, the Named Insured.  *Trinity Policy* [#127-1] at 10.

[14]  "Us" refers to the insurer, the Trinity Defendants.  *Trinity Policy* [#127-1] at 10.

[15]  "Our" refers to the insurer, the Trinity Defendants.  Trinity Policy [#127-1] at 10.

- The August 4, 2011 Letter also included a conclusion section which stated: "Trinity will agree to share in the defense cost of defending Okland but requires additional information to determine what share of the defense costs it will pay. Please provide Trinity with information concerning what other insurers are currently defending Okland, and if known, how they are sharing in the cost of defending Okland. Once Trinity has that information it will be in position to discuss a cost sharing arrangement with those other insurers. . . .
  Trinity expressly reserves all rights in under the Policies and the Umbrella Policies and available at law to take additional reservations and denials . . ." *Id.* at 34-35.

- On November 29, 2011, Okland finalized a settlement agreement with RLCOA regarding the Underlying Action. *D'Agostino Depo. Trans.* [#128-5] at 149:11-16.

- On February 24, 2012, Plaintiffs sent a letter to the Trinity Defendants seeking their availability for a conference call regarding defense costs. *See generally February 24, 2012 Letter* [#148-2].

The Trinity Defendants allege that Plaintiffs "settled the [U]nderlying [A]ction without so much as requesting Trinity's participation in the settlement negotiations." *Trinity Reply* [#170] at 10. They further argue that failure to consult them regarding settlement discussions violated the Trinity Policy's cooperation requirement. *Id.*

"Recovery under an insurance policy may be forfeited when, in violation of a policy provision, the insured fails to cooperate with the insurer in a material and substantial respect." *Hansen v. Barmore,* 779 P.2d 1360, 1364 (Colo. App.1989) (internal quotation marks and citation omitted). "The purpose of a cooperation clause is to protect the insurer in its defense of claims by obligating the insured not to take any action intentionally and deliberately that would have a substantial, adverse effect on the insurer's defense, settlement, or other handling of the claim." *State Farm Mut. Auto. Ins. Co. v. Secrist,* 33 P.3d 1272, 1275 (Colo. App. 2001). However, "there must be a lack of co-operation by the [in]sured in some material and substantial respect, and any formal, inconsequential, or

20

collusive lack of co-operation will be immaterial." *Farmers Auto. Inter-Ins. Exchange v. Konugres*, 202 P.2d 959, 963 (Colo. 1949); *see also Secrist*, 33 P.3d at 1275 ("The failure to cooperate is a breach only if material and substantial disadvantage to the insurer is proved.") (citation omitted). Here, the Trinity Defendants make no allegation that they were disadvantaged as a result of Plaintiffs' settling the claim against Okland without inviting the Trinity Defendants to participate in those settlement discussions. As a result, the Court finds that the alleged breach of the cooperation clause does not excuse the Trinity Defendants' duty to indemnify.

The Trinity Policy also included a no-voluntary-payments clause. *Trinity Policy* [#127-1] at 17 ("[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."). "The Colorado Supreme Court has not addressed the question of whether an insured's breach of a no-voluntary-payments provision will bar coverage in the absence of prejudice to the insurer and cases from other jurisdictions are in conflict." *Public Serv. Co. of Colorado v. Axis Surplus Ins. Co.*, No. 12-cv-01174-RPM, 2013 WL 4027099, at *5 (D. Colo. Aug. 7, 2013). In *Public Service*, the Court noted that the Colorado Supreme Court is likely to adopt the view that "'forfeiting insurance benefits when the insurer has not suffered any prejudice would be a disproportionate penalty and provide the insurer a windfall based on a technical violation of the policy.'" *Id.* (quoting *Lauric v. USAA Cas. Ins. Co.*, 209 P.3d 190, 193 (Colo. App. 2009)). The Court agrees with this analysis.

Here, the Trinity Defendants received notice of the Underlying Action at the latest on April 6, 2011. *April 6, 2011 Letter* [#128-4] at 1. In addition, on November 29, 2011, Okland finalized a settlement agreement with RLCOA regarding the Underlying Action.

21

*D'Agostino Depo. Trans.* [#128-5] at 149:11-16.  When, as here, an insurer receives notice prior to a lawsuit's disposition, there is "no presumption of prejudice and the insurer is required to prove prejudice," even if notice was delayed.  *Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 648 (Colo. 2005); *see also Clementi v. Nationwide Mut. Fire Ins.* Co., 16 P.3d 223, 232 (Colo. 2001).  However, the Trinity Defendants make no allegation and offer no proof that they were prejudiced in any way.  Accordingly, the Court finds that the alleged breach of the no-voluntary-payments provision does not excuse the Trinity Defendants' duty to indemnify.

**D.     The Policies Are Co-Primary**

"When one insurance policy is 'primary' and the other policy is 'excess,' the primary insurer pays for damages up to the limits of its policy; when that policy is exhausted, the excess insurer covers any remaining damages up to the limits of its policy." *Baker v. Allied Prop. & Cas. Ins. Co.*, --- F.Supp.2d ---, 2013 WL 1397297, at *4 (D. Colo. April 5, 2013) (quoting *Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc.*, 927 P.2d 341, 346 (Colo. 1997)); *see also D.R. Horton, Inc.-Denver v. Travelers Indem. Co. of Am.*, 2012 WL 5363370, at *7 (D. Colo. Oct. 31, 2012) ("*D.R. Horton I*") (citing *Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099, 1103 (Colo. 2011)).  However, when multiple insurers have the same duty to defend, such as when there is more than one primary insurer, that duty is joint and several.  *See D.R. Horton, Inc.-Denver v. Mountain States Mut. Cas. Co.*, No. 12-cv-01080-RBJ, 2013 WL 674032, at *3 (D. Colo. Feb. 25, 2013) ("*D.R. Horton II*").  In addition, "the allocation of defense costs is a matter to be worked out among the insurers and, if they cannot do so, then by a court." *Id.*  Further, pursuant to Colorado insurance law, an "excess insurer is entitled to recover from the primary insurer the amount paid by it which, under the primary

22

policy, should have been paid by the primary insurer." *Unigard Mut. Ins. Co. v. Mission Ins.*

*Co.*, 907 P.2d 94, 99 (Colo. App. 1994).

Here, the language in the two insurance policies must be considered carefully.  The

Travelers Policy states:

> **4.      Other Insurance**
>
> > If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> > **a.      Primary Insurance**
> > This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c**. below.
>
> > **b.      Excess Insurance**
> > This insurance is excess over:
> >
> > > (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:
> > > . . .
> > >
> > > (2) *Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.*
>
> > When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers. . . .

*Travelers Policy* [#70-6] at 31 (emphasis added).

The Trinity Policy provides that:

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.     Primary Insurance
       This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below.

b.     Excess Insurance
       This insurance is excess over:

       . . .

       (2) *Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of endorsement.*

When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". . . .

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

       (1) The total amount that all such other insurance would pay for the loss in this absence of this insurance; and
       (2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

C.     Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on

24

the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

*Trinity Policy* [#127-1] at 17-18 (emphasis added).

Essentially, each policy provides that when there is any other insurance for Okland, Travelers and the Trinity Defendants provide only excess coverage. "Competing excess clauses are 'mutually repugnant and void.'" *Baker v. Allied Prop. & Cas. Ins. Co.*, --- F.Supp.2d ---, No. 12-cv-00010-RBJ, 2013 WL 13972797, at *3 (D. Colo. April 5, 2013) (quoting *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 660 (Colo. 2011)). In such a circumstance, "[t]hree methods exist for apportionment between co-primary insurers: (1) proration in accordance with the proportionate policy limits of the respective policies (method one); (2) apportionment on an equal basis up to the applicable policy limits (method two); and (3) apportionment based on the loss which each insurer would sustain without the other (method three)." *Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc.*, 947 P.2d 341, 347 (Colo. 1997). The Trinity Policy specifically allows for either method one or method two. Because "Colorado public policy favors and requires the second method for apportionment," *id.*, the Court holds that method two is applicable to allocate payment of the defense costs attributable to Beaty's work on the Project that were incurred on or after April 6, 2011. *See Baker v. Allied Prop. & Cas. Ins. Co.*, --- F.Supp.2d ---, 2013 WL 1397297, at *6 (D. Colo. April 5, 2013) (holding that co-primary insurers "must share the losses on a dollar-for-dollar basis until the policy limits of one is exhausted").

At this time that amount is unknown and must be determined in further proceedings. While the Trinity Defendants argue that Exhibit C [#128-3] attached to their Motion [#128] indicates that Beaty was only responsible for 0.77% of the defense costs and fees, the

Court entered an Order [#175] striking Exhibit C and, therefore, will not consider Exhibit C or the Trinity Defendants' arguments relating to Exhibit C for purposes of this Recommendation.

## E.      Effect of the Settlement Agreement

As noted above, on June 19, 2012, Okland and Beaty entered into a settlement agreement with an effective date of April 27, 2012 which "fully and finally [ ] resolve[d] and release[d] all claims which have been asserted or which could have been asserted by Okland against Beaty in [the Underlying Action]." *Settlement Agreement* [#128-8] at 1; *see also Trinity Motion* [#128] at 7.  The Settlement Agreement also states:

> Nothing in this Agreement shall preclude or limit the right of Okland and/or Travelers (or any Travelers related entity) from pursuing its additional insured (AI) claims in this matter; SUBJECT HOWEVER, to a credit in the sum of $75,000.00 which [Okland] agree[s] to apply toward the payment and satisfaction of any recovery on the claim which [Beaty] ha[s] asserted or which may be asserted against Beaty's insurers for Additional Insured coverage under any policies of insurance issued to Beaty.

*Settlement Agreement* [#128-8] at 2.   This unambiguous provision of the Settlement Agreement makes clear that Beaty's insurers, the Trinity Defendants, are entitled to a $75,000.00 credit toward any amount they are required to pay toward the costs associated with defending Okland.

In this case, Plaintiffs are asserting their claims based on their "equitable right of subrogation." *Amended Complaint* [#11] at ¶ 48.   "Subrogation is defined as 'the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt.'" *Powers v. BlueCross BlueShield of Illinois*, --- F.Supp.2d ---, 2013 WL 2317236, at *4 (D. Colo. May 28, 2013) (quoting *Cotter Corp. v. American Empire Surplus Lines Ins. Co.*, 90 P.3d 814,

26

833 (Colo. 2004)).   In an insurance context, "[t]he insurer [ ] stands in the shoes of its insured [which] prevents the insured from being unjustly enriched by recovering from both the insurer and the third party, and prevents the third party from escaping liability."  *State Farm Fire & Cas. Co. v. Weiss*, 194 P.3d 1063, 1066 (Colo. App. 2008).   Here, Plaintiffs cannot stand in Okland's shoes in seeking reimbursement of defense costs from the Trinity Defendants and, at the same time, ignore the agreement Okland entered into with the Trinity Defendants' insured, Beaty, regarding potential claims against the Trinity Defendants.  *Cf. Farmington Cas. Co. v. United Educators Ins. Risk Retention Grp., Inc.*, 117 F.Supp.2d 1022, 1030 (D. Colo. 1999) (citation omitted) ("subrogation generally requires that the insurer stand in the shoes of the insured, possessing only the rights and remedies possessed by the insured").   Accordingly, the Court finds that the Trinity Defendants are entitled to apply a $75,000.00 credit toward any defense costs they ultimately are required to pay.[16]

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Plaintiffs' Motion [#126] be **GRANTED in part** and that the Trinity Motion [#128] be **GRANTED in part**.   Summary judgment should enter in favor of Plaintiffs and against the Trinity Defendants for apportionment of defense costs and fees incurred after April 6, 2011 relating to allegations in the Underlying Action about work performed by Beaty at the

---

[16]  While the Trinity Defendants note in their Motion [#128] that another of Beaty's insurers funded 70% of the settlement between Beaty and Okland, *Trinity Motion* [#128] at 13 n.3, the Settlement Agreement does not draw a distinction between the Trinity Defendants and any other insurer.  The Court will enforce the plain language of the Settlement Agreement which simply refers to "Beaty's insurers."   Accordingly, the Trinity Defendants, the only Beaty insurers who have presented this issue to the Court, are entitled to the full $75,000.000 credit.

Project on a dollar-for-dollar basis up to the applicable policy limits, with a $75,000.00 credit to the Trinity Defendants.  In all other respects, the Motions should be denied.[17]

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  August 29, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

[17]  The Court expresses no opinion regarding the impact of this Recommendation and its simultaneous Recommendation regarding Plaintiffs' Motion for Partial Summary Judgment Against Defendant Mountain States Mutual Casualty Company Re: Liability [#69] and Defendant Mountain States Mutual Casualty Company's Motion for Summary Judgment Pursuant to F.R.C.P. 56 [#84] on the overall allocation of defense costs.  Such allocation must be made either by the parties or in future proceedings.